William H. BEGGS and Mary Clark Beggs, Plaintiffs-Appellees,

v.

DOUGHERTY OVERSEAS, INC., Defendant-Appellant.

No. 258, Docket 26509.

United States Court of Appeals Second Circuit.

Argued Jan. 20, 1961.

Decided Feb. 15, 1961.

---

12. Substantially codified as 29 U.S.C.A. 207(e).

13. Mitchell v. Adams, 5 Cir., 1956. 230 F. 2d 527, 530.

Robert Granville Burke, New York City (Chapman & Burke, New York City, on the brief), for plaintiffs-appellees.

J. Edward Davey, Jr., New York City (Carl E. Buckley and Nevius, Jarvis & Pilz, New York City, on the brief), for defendant-appellant.

Before LUMBARD, Chief Judge, and MEDINA and SMITH, Circuit Judges.

SMITH, Circuit Judge.

Plaintiffs, husband and wife, brought this action for damages against defendant for damages for wrongful termination of their employment contracts. The District Court, Sugarman, J., found for plaintiffs, awarding plaintiff William H. Beggs damages of $13,015.15 and plaintiff Mary Clark Beggs damages of $344.-63, with interest.

William H. Beggs was employed under a contract dated October 1, 1956 as a personnel manager, Mary Clark Beggs under a contract dated November 25, 1956 as a stenographer, both to perform services in Cambodia in connection with the construction for the Cambodian government of a highway project that was financed by the International Cooperation Administration, an agency of the United States.

On April 1, 1957, while Mr. and Mrs. Beggs were employed at Phnom Penh,

Cambodia, A. L. Dougherty, president of defendant, in Cambodia on an inspection trip, fired Beggs after a dispute as to whether Beggs had been instructed on the previous day to clear Dougherty's bags through customs on April 1. Beggs' contention is that no such instructions had been given, and that Dougherty, mistakenly believing they had been given, cursed Beggs out before his wife and others and on Beggs' reacting to that conduct by telling Dougherty to carry his own bags, fired Beggs. Mrs. Beggs' employment was also terminated by her superior because of her husband's departure. Dougherty's contention was that Beggs had been instructed as to the bags the previous day, had not taken care of them, and when Beggs was asked by Dougherty, without profanity, who had taught him to be a personnel manager, Beggs told Dougherty to carry his own "—— bags," whereupon Beggs was fired for cause.

 Appellant contends that the trial court was in error in crediting Beggs' story, since there were inconsistencies in it and it was contradicted by credible witnesses. It was within the province of the trial judge to determine credibility, however, and he might have found the inconsistencies not established or that they were innocent errors not affecting the determination of the essential issue, whether the firing was for cause.

The first claimed inconsistency was testimony that Beggs saw one Smith in New York October 3, 1956, while company travel documents purported to show that Smith arrived in Cambodia October 1, 1956. This was clearly wide of the issue and easily ascribable to innocent failure of memory, even if the company records be taken as infallible. The second discrepancy was closer to the issue, testimony by Beggs that he was instructed to take one Finney to the doctor April 1 while company records are claimed to show Finney admitted to the infirmary March 31. The record in evidence, however, while it shows an order that Finney be confined to bed for ob-

servation, does not establish that confinement to bed was effected on March 31 in the infirmary. Again the trier may have determined that Beggs was incorrect in his memory without wholly discrediting his other testimony, or may have determined that the records were not sufficient to contradict him. The third claimed inconsistency is even weaker, an argument that Beggs couldn't have been meeting Portuguese employees at the airport because Beggs couldn't speak Portuguese, and his failure to mention his Portuguese assistant. The claimed inconsistencies did not require as a matter of law that the judge discredit Beggs on the main points. The trial judge saw the witnesses and had the advantage of observation of their demeanor on the stand. "The burden on an appellant, who seeks to reverse a judgment for error in fact, to show that essential findings are clearly erroneous, is, indeed, a heavy one when, as in this instance, decision must turn largely upon the credibility of witnesses the trial judge saw and heard testify. Rule 52(a) F.R.C.P., 28 U.S.C.A.: U. S. v. Aluminum Co. of America, 2 Cir., 148 F.2d 416, 433; Moore v. Ford Motor Co., 2 Cir., 43 F.2d 685." Hedger v. Reynolds, 2 Cir., 1954, 216 F.2d 202, 203. Cf. Broadcast Music, Inc. v. Havana Madrid Restaurant Corp., 2 Cir., 1949, 175 F.2d 77, 79, 80. The finding that the discharges were not for good cause and that they were in breach of contract must stand.

Three other issues remain on this appeal, whether the court properly allowed as elements of damage (1) $650.00 spent in seeking new employment, and (2) $1610.38 awarded Mr. Beggs and $341.01 awarded Mrs. Beggs for United States income taxes; (3) whether plaintiffs are entitled to award of additional costs because the appeal was frivolous and for purposes of delay.

The parties assume that New York law applies. Since the contract was entered into in New York and since there is no proof that the law of Cambodia, the only other jurisdiction with any apparent relation to the contract, differs from that

of New York, nor proof that the parties to the contract intended any other law to apply, we consider that New York law does so apply.

The award of $650 allegedly spent in seeking employment is attacked on three grounds, failure of proof, necessity of such expenditure in any case on completion of the contract term, and a claimed New York rule that advertising costs for a new position are not proper items of damages.

■■ The lack of proof argument is based on an alleged absence of vouchers and receipts. That type of evidence might have been helpful, but such corroboration is not essential to support direct testimony, R. pp. 97, 134, 136, that the expenditures had been made. So far as the contention goes that the expenditures would have been necessary regardless of the breach, it is entirely possible that future employment might have been obtained by normal contacts and correspondence starting a sufficient time before the end of the contract term, and it must be remembered that after the breach the employees were under a duty to use all reasonable means to obtain prompt employment elsewhere to minimize damages.

■■ The general rule appears to be that a wrongfully discharged employee may recover the necessary expenses of seeking new employment. Corbin, Contracts, Section 1044; Williston, Contracts, Section 1359; McCormick, Damages, Section 163; Sedgwick, Damages, Section 667. Development Co. of America v. King, 2 Cir., 1909, 170 F. 923 and cases collected in 84 A.L.R. 171. The appellant contends that the New York rule is to the contrary, citing Van Raas v. Rosenbaum-Grinnell, App.Term 1960, 23 Misc.2d 919, 206 N.Y.S.2d 235. Were there a clear precedent in the Appellate Division to this effect we would be bound to follow it as expository of the New York law. Fidelity Union Trust Co. v. Field, 1940, 311 U.S. 169, 61 S.Ct. 176, 85 L.Ed. 109, Six Companies of California v. Joint Highway District No. 13 of California, 1940, 311 U.S. 180, 61 S.Ct. 186, 85 L.Ed. 114. The Van Raas case, however, is far from a clear enunciation of New York doctrine. It is a brief one paragraph memorandum opinion, disallowing so much of the recovery ($37.50 of a total of $780) as was claimed to be advertising expense. It may, however, have been eliminated for lack of proof, a highly probable conclusion in view of the apparent allowance in that case of reimbursement of other re-employment expense. The ambiguity of the memorandum, the lack of other New York cases looking in the direction of disallowance, and the weight of authority favoring allowance, persuades us that the highest New York court would allow such an item. We conclude that New York would follow the general rule and allow the $650.00 re-employment expense item here.

■ On the income tax item, both parties were familiar with the advantage in this regard enjoyed in foreign employment for 18 months, Sec. 911, I.R.C., 26 U.S.C.A. § 911. Significantly, the basic contemplated term of the employment contract was one of eighteen months, as evidenced by the maximum 10% bonus attainable upon completion of that length of satisfactory service. Furthermore, the provision in Section XIX of the contract concerning reimbursement for Cambodian income tax payments indicates that the parties, as is the case in so many foreign employment contracts, had income taxes on their minds. From these facts it may be inferred that the tax benefits accruing from lengthy foreign employment were very much in the minds of the parties when they contracted; plaintiffs lost these benefits because of the wrongful discharge. Since the damages were foreseeable and in the reasonable contemplation of the parties as a result of a breach (Hadley v. Baxendale, 9 Exch. 341, 156 Eng.Reprint 145), the income tax items were properly allowed as elements of damage.

■ The additional claim of the plaintiffs for damages under Rule 26(b),

Rules, 28 U.S.C.A., Court of Appeals for the Second Circuit, is not, however, sustainable. The issues on re-employment expense and loss of tax advantage cannot be said to be colorable, particularly in view of the dearth of New York precedent in this field. The appeal is far from frivolous.

Affirmed.